Sanders, Janet L., J.
This case concerns various disputes between a landlord (the defendants) and their tenant (the plaintiff), who vacated the premises in October 2003 and subsequently lost a summary process action filed against her in District Court. The plaintiff alleges numerous statutory and common-law violations, and the defendants have counterclaimed, alleging that certain changes that she made to the premises during her tenancy have caused them damage. The matter is now before the Court on Cross Motions for Summary Judgment. For the following reasons, this Court concludes the plaintiffs motion must be Denied and the defendants’ motion must be Allowed.

*294
BACKGROUND

The following facts are either undisputed or this Court assumes to be true for purposes of these motions. On February 8, 2001, plaintiff Donna Murray and the defendants, Edward and Maureen Zullo, signed a lease (the “Lease”) for premises located at 91-P Union Street in Natick (the “Apartment”), The Zullos also signed a Housing Assistance Payments contract (the “HAP Contract”) with the Framingham Housing Authority (“FHA”) as part of the Section 8 subsidized housing program. Before the Lease and HAP Contract were signed, the FHA inspected the Apartment and found it passed all applicable inspection criteria. The FHA continued to make annual inspections thereafter.
Both the Lease and the HAP Contract recited a total monthly rent of $900: $365 of this amount was to be paid by Murray, with the remainder paid to the Zullos by the FHA. Unbeknownst to the FHA, the Zullos and Murray also entered into a side agreement whereby Murray would pay an additional $ 100 a month in rent.
During her tenancy, Murray made several modifications to the Apartment, including, but not limited to: adding a deck, repairing the ceiling, changing lighting and cabinetiy in the kitchen, and adding a bedroom to the'Apartment. The Zullos paid the labor costs for the ceiling and electrical work. Murray had a parking space, initially located not far from her front door. As the tenancy progressed, the location of the space was changed, moving it further away. Murray suffers from some unspecified disability.
Murray’s tenancy was uneventful until the spring of 2003. In April 2003, Murray began to pay the electric bill, previously paid by the Zullos; she fell behind in her payments. In May 2003, Murray got a dog, and a disagreement ensued about whether she was allowed to keep a pet (the Lease stating that she was not). On August 21, 2003, Murray’s daughter (previously in the custody of the Department of Social Services) moved into the Apartment. The Lease provided that Murray was to be the sole occupant. The FHA told Murray that her daughter could not live at the Apartment without the Zullos’ written permission, which they refused to give. On September 15, 2003, the FHA wrote the Zullos that Murray’s daughter was occupying the Apartment without its permission.
On September 19, 2003, the Board of Health inspected the Apartment at Murray’s behest and found several violations of the State Sanitary Code. When the Zullos contacted the Board about the inspection three days later, they were informed for the first time that the Apartment itself was not legal. As a result of this determination, the Board on October 2, 2003 ordered that the Apartment be vacated within 60 days.
In the meantime, the Zullos had served Murray with a 30-day Notice to Quit. This Notice sought Murray’s eviction based on alleged violations of her Lease, including, among other things, the occupancy of the Apartment by her daughter and the keeping of a pet. Thereafter, the Zullos filed a summary process action in Natick District Court. Murray did not file an answer or other responsive pleading. Murray had located another apartment through the FHA and moved into the new apartment on or about October 31, 2003.
On November 13, 2003, the summary process action was set down for a bench trial. Murray appeared at the trial representing herself. She did not assert any counterclaim or affirmative defenses. The parties stipulate that the district court (Singer, J.) found for the Zullos and entered a judgment for possession in their favor.
DISCUSSION
The plaintiffs Amended Complaint as well as her memorandum filed in connection with these motions allege a hodgepodge of facts and legal theories. Count I (alleging a violation of G.L.c. 186, §18) and Count II (alleging a violation of G.L.c. 186, §14) stem directly from her tenancy and the conditions existing at the time she occupied the Apartment. This Court concludes that these claims could and should have been litigated in the summaiy process action and cannot be relitigated here. Counts III and IV (alleging a breach of contract) primarily stem from the parties’ side agreement that Murray pay an extra $ 100 a month to the Zullos in rent. To the extent that this was in violation of FHA rules, however, only the FHA has the standing to challenge the arrangement. Count V alleges a violation of G.L.c. 93A which, based on the record before the Court, plaintiff has no reasonable expectation of proving. Count VII alleges a violation of G.L.c. 151B, but the plaintiff never filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”), thus requiring dismissal of this claim. In the final analysis, all that survives the defendants’ motion for summary judgment here is Count VI of Plaintiffs Amended Complaint (alleging unjust enrichment). As to that count, the defendants have a Counterclaim, which also remains in the case. What follows is the Court’s reasoning as to the conclusions set forth above.

A. Count I and Count II: Violations of G.L.c. 186, §18 and 186 §14

The factual allegations that the plaintiff cites in support of these two counts include the following. First, the Apartment contained numerous violations of the State Sanitary Code, in breach of the warranty of habitability and of the implied covenant of quiet enjoyment. Second, the Zullos sent their Notice to Quit three days after the Apartment inspection finding sanitary code violations, thus creating a rebuttable presumption that her eviction was in retaliation for Murray’s complaints. Third, beginning in April 2003, the Zullos required Murray to pay the electric bill even though the Lease had provided that the Zullos pay; this transfer was therefore in violation of G.L.c. 186, §14. All ofthese allegations relate to the terms and conditions of her tenancy, which Murray could and should have litigated in the summary process action. *295 They are therefore barred by the doctrine of claim preclusion.
The doctrine of claim preclusion (or res judicata) makes a final judgment in a prior action conclusive on a party and its privies, and prevents relitigation of all matters that were or could have been adjudicated in the action. Blanchette v. School Comm’n of Westwood, 427 Mass. 176, 179 n.3 (1998). There are three essential elements to the doctrine of claim preclusion: “(1) the identity or privity of the parties to the present and prior actions;' (2) the identity of the cause of action; and (3) a prior final judgment on the merits.” TLT Constr. Corp. v. A. Anthony Tappe and Assocs., Inc., 48 Mass.App.Ct. 1, 4, (1999), quoting Gloucester Marine Rys. Corp. v. Charles Parisi, Inc., 36 Mass.App.Ct. 386, 390 (1994) Clearly, two of these elements are satisfied: the parties in the instant action are identical to those in the summary process case, and the summary process action resulted in a final judgment for the Zullos on the merits. The only question then is whether the claims in the two actions are identical. I conclude that they are.
The guiding principle here is that Murray is precluded from litigating not only those claims that were actually decided in the summary process action, but also those that could have been brought in that action. See Charlette v. Charlette Bros. Foundry, Inc., 59 Mass.App.Ct. 34, 44 (2003) (“claim preclusion will apply even though a party is prepared in a second action to present different evidence or legal theories to support his claim or seeks different remedies”). By entering ajudgment for the Zullos in the summary process action, the Natick District Court judge necessarily determined that the Zullos had properly terminated the tenancy and were entitled to gain possession of the Apartment. Although Murray did not assert any counterclaims or affirmative defenses (so that the district judge would not necessarily have made any findings as to the condition of the Apartment, for example), the summary process action was the proceeding in which to raise these issues. Because the facts Murray now asserts in support of Counts I and II of her claim all grew out of the same transaction or occurrence (namely, the tenancy), the district court’s decision prevents her from litigating those claims later in this new forum.
The case of Bui v. Ma, 62 Mass.App.Ct. 553 (2004) is particularly instructive. In that case, the landlord and owner of the property, Atlantic, sought to evict the tenant Ma, who was operating a Chinese restaurant at the premises. After a trial, a Superior Court judge ruled in favor of the tenant, holding that she had the right of possession under a written lease. The property was then sold to the plaintiff, Bui, who instituted a second eviction action, this time raising a use restriction in the lease which she claimed was violated by the operation of a restaurant. Bui also contended that a foreclosure which had taken place when her predecessor owned the property operated to terminate the written lease that Ma was relying on. Although neither the foreclosure nor the use restrictions had been raised in the first eviction action, the Appeals Court held that the first action prevented Bui from raising these claims in the second lawsuit on res judicata grounds. Because the first action concerned the validity of the lease as between Ma and the previous landlord, all claims regarding that issue, including the effect of the foreclosure and the use restrictions, were precluded by that earlier litigation. The court reasoned that Atlantic had the “opportunity, ability, and incentive” to raise these same claims in the first action in its effort to terminate Ma’s tenancy. Id. at 561. Bui (as Atlantic’s succeessor in interest) was not entitled to a second bite of the apple.
In the instant case, the Zullos instituted a summary process action in Natick District Court based on what they claimed to be material breaches of the lease. Their legal right to terminate the tenancy was therefore directly at issue in the district court proceeding. If there were terms of that tenancy which were invalid (for example, the transfer of the responsibility to pay electrical bills), or circumstances that legally prevented the Zullos from obtaining ajudgment of possession (for example, proof that they were acting in retaliation for Murray’s complaint about the Apartment’s condition) then Murray could have and should have brought those issues to the attention of the judge. To allow her to do so now would undermine the principles of finality that the doctrine of res judicata is designed to protect.

B. Count III and TV: Breach of Contract and Breach of HAP Contract

These two Counts principally concern the side agreement between Murray and the Zullos that she pay an additional $100 a month in rent. Murray has no standing to claim that this was in breach of the HAP Contract between the Zullos and the FHA. She was not a signatory to that contract, nor can she claim any rights as a third-party beneficiary.[1] Plaintiff effective conceded this point at oral argument on the summary judgment motions.
As to whether this constituted a breach of contract between the Zullos and Murray, the record is devoid of evidence to support this claim. Rather, the undisputed facts show that, before she even moved in, the Zullos asked Murray to pay an additional $100 per month and she agreed to do so. In effect, the parties agreed to a modification of the prior agreement that Murray pay $365 a month. For more than two years, Murray inhabited the Apartment and willingly paid without complaint. That this agreement was illegal in the eyes of the FHA does not mean that Murray can now get her money back.
More generally, Murray alleges that she is entitled to full reimbursement for the rent she and the FHA paid for the Apartment because it was illegal. She relies on (apparently unpublished) decisions of the Housing Court. Putting aside the question of whether these decisions carry any weight with this Court, they are quite different from the instant case. In one of the cited decisions, it was held that the landlord had no right to recover unpaid rent where the apartment was illegal; in *296 the other decisions, the apartment was illegal because of the conditions that the landlord either caused or permitted to exist on the premises. In the instant case, the Zullos are not seeking to collect rent, and the condition of the Apartment had nothing to do with the determination by the Town that it could not be leased out. Moreover, there is no evidence to suggest that the Zullos either knew or should have known they could not lease it: the FHA inspected the premises before Murray was allowed to move in on a Section 8 voucher, and inspected it annually after she became a tenant. After each inspection, the Apartment was approved as a legitimate premises for use as a Section 8 (residential) unit. Finally, the remedy that Murray seeks is not supported by any decision of which this Court is aware. After having been a tenant at the Apartment for two years, Murray now seeks to require the Zullos to pay her all the rent they received on the Apartment, including that amount paid by the FHA. That would result in a undeserved windfall for the plaintiff.
C. Count V: Violation ofM.G.L.c. 93A
Murray’s 93A claim is based on the Apartment’s illegality and the same facts alleged in support of Counts I and II concerning the health code violations. Because these claims do not survive independently, they cannot form the basis for a 93A claim.

D. Count VI: Unjust Enrichment

In Count VI of Murray’s Amended Complaint, she alleges that the Zullos are “benefitting from the improvement and repairs” that Murray made to the Apartment before she was evicted. Because they retain the benefits of these improvements, it is alleged, they have been unjustly enriched. The Zullos counter that, far from being improvements, the changes that Murray made actually decreased the value of the Apartment and caused them to incur costs to return the Apartment to its original condition. They have asserted a counterclaim against Murray in connection with these costs. I conclude that both Count VI and the Counterclaim involve questions of fact which are in dispute, thus making summary judgment inappropriate.

F. Count VII: Discrimination in Violation ofM.G.L.c. 151B, §4(6) and (11)

In Count VII, Murray alleges that the Zullos violated G.L.c. 15 IB, §4(11) when they sought to terminate the Lease as a result of her daughter’s occupancy of the Apartment. Murray also alleges that the Zullos violated G.L.c. 151B, §4(7A) when they moved her parking further away from the Apartment, thus failing to make a reasonable accommodation for a claimed physical disability. Putting aside the factual deficiencies of these claims,[2] this Court concludes that plaintiff is barred from asserting them because she did not first file a complaint with the MCAD.
Section 5 of the Chapter 15 IB states that complaints alleging violations of that statute must first be filed with the MCAD “within six months after the alleged act of discrimination.” Section 9 permits the filing of a civil action only if the plaintiff “has previously filed a timely complaint with the [MCAD] and ninety days have passed (or a commissioner has assented to an earlier filing).” Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. 815, 816 (1988). In the absence of a timely complaint to the MCAD, there may be no resort to the courts. Charland v. Muzi Motors, 417 Mass. 580, 586 (1994). Where a plaintiff fails to adhere to the statutoiy prerequisites, dismissal of her claim is appropriate. Cherella v. Phoenix Technologies Ltd., 32 Mass.App.Ct. 919 (1992).

CONCLUSION AND ORDER

For all the foregoing reasons, the plaintiffs Motion for Summary judgment is DENIED. The defendants’ Motion for Summary Judgment is ALLOWED and it is hereby ORDERED that Counts I, II, III, IV, V and VII of plaintiffs Amended Complaint be DISMISSED with prejudice.

 Part B of the HAP Contract governs the rent to be paid to the landlord. Section 12. a of the HAP contract states that the tenant “may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B.”

 For example, it is difficult to see how the Zullos discriminated against Murray based on her daughter’s occupancy of the Apartment when her 8 voucher was for single occupancy only, and the HAP Contract specifically permitted the FHA to terminate its payments if there were any increase in family size. See Section 4(6)(b).