JoDee C. Doyle, trustee,[1] *vs.* Commonwealth & others.[2]

Suffolk. April 4, 2005. - July 20, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Land Court,* Judicial discretion. *Real Property,* Registered land, Certificate of title.

Where a transfer certificate of title to a parcel of registered land was defective on its face and was issued in error, the Land Court judge hearing a petition by the purchaser of the parcel for approval of a plan had the authority, sua sponte, to review the validity of the transfer certificate, and the exercise of that authority was not contrary to the statutory protections afforded bona fide purchasers, where the error would have been apparent to any purchaser fulfilling her obligation to investigate other certificates of title, documents, or plans in the registration system noted on the deed before presenting it to the assistant recorder of deeds for the purpose of obtaining a transfer certificate [690-696]; moreover, the judge correctly determined that the transfer certificate was issued in error and was therefore invalid [696-697].

Civil action commenced in the Land Court Department on November 26, 1996.

The case was heard by *Leon J. Lombardi,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeremiah W. Doyle, IV,* for the plaintiff.

*Jeanne S. McKnight* (*Shirin Everett* with her) for town of Salisbury.

*James A. Sweeney,* Assistant Attorney General, for the Commonwealth.

*Andrew A. Caffrey, Jr.,* for Heidi A. Connolly, was present but did not argue.

[1]Of Four Ninety-Four NEB Realty Trust.

[2]Town of Salisbury; Alfred Fisichelli; Joseph Fisichelli; Steven A. Fisichelli; Heidi A. Connolly, trustee of Girls Realty Trust; Donna M. Bates and Natalie S. Lucas, trustees of 5D Realty Trust; Claire Causer; Diane M. Larocque; Michael C. Faro; and Elizabeth A. Faro.

*Michael P. Healy*, for Real Estate Bar Association & another, amici curiae, submitted a brief.

CORDY, J. This case concerns the authority of a Land Court judge to examine the validity of a previously issued certificate of title to registered land. In 1992, the plaintiff JoDee C. Doyle, trustee of Four Ninety-Four NEB Realty Trust (trust), acquired from Salisbury Beach Associates an oceanfront parcel of registered land in Salisbury, depicted on a 1920 plan as a "paper street." The trust obtained a transfer certificate of title from an assistant recorder in the Essex South District registry of deeds. After the chief title examiner for the Land Court informed the trust that the certificate should not have been issued, the trust petitioned for the approval of a new plan redesignating the land as a "lot" with defined boundaries, and the issuance of a new certificate of title. The Commonwealth, the town of Salisbury, and abutters filed objections to the petition. After hearing, a Land Court judge entered a judgment dismissing the petition, concluding that the transfer certificate of title to the land was invalid. We affirm.

Where a certificate of title to registered land is defective on its face and was issued in error, we conclude that a Land Court judge has the authority sua sponte to review the validity of such a certificate, a power that is both consistent with a court's authority in a proceeding brought under G. L. c. 185, § 114, to correct "any error or omission . . . made in entering a certificate," and necessary to protect its "vital interest in maintaining the integrity of [Land Court] records." *Assistant Recorder of N. Registry Dist. of Bristol County* v. *Spinelli*, 38 Mass. App. Ct. 655, 657 (1995). The exercise of this authority is not contrary to the statutory protections afforded bona fide purchasers where the error would have been apparent to any purchaser fulfilling her obligation to investigate other certificates of title, documents, or plans in the registration system noted on the face of the deed before presenting it to the assistant recorder for the purpose of obtaining a transfer certificate of title.

1. *Background.* The following facts are not in dispute. The parcel of land at issue (locus) is a strip of land that lies between a State highway and Salisbury Beach in Salisbury. A judge of the Land Court issued a decree of registration to Salisbury

Beach Associates for the locus and surrounding land, accompanied by an original certificate of title and a plan, in 1913.[3] On the plan, the locus was designated a lot. In 1920, a judge approved a second plan for the locus and surrounding land, numbered 3200-XV (1920 plan). On this plan, the locus is designated "8th St. East," and lacks easterly or westerly boundaries. A notation on the face of the 1920 plan states, "Separate certificates of title may be issued for lot 362B and the numbered lots in Blocks G, H, O, P & Q as shown hereon." This instruction did not include the locus. The locus is depicted on the 1920 plan as a street situated between blocks G and H, which are subdivided into lots.[4]

On June 8, 1992, the trust acquired the locus by deed from Salisbury Beach Associates for consideration of $25,000. The deed describes the boundaries of the property as "westerly by the Easterly line of the State Highway fifty feet," and "easterly by the land now or formerly of the Salisbury Beach Associates." The deed further states, incorrectly, that all of the locus's boundaries "are determined by the Court to be located as shown upon [the 1920 plan] . . . . [T]he above land is shown thereon as 8th Street East." An assistant recorder for the Essex South District registry of deeds, apparently making no examination of the 1920 plan, accepted the deed for filing and issued a transfer

---

[3]The original owner of Salisbury Beach was apparently the town of Salisbury. In 1903, the town conveyed Salisbury Beach, including the locus, to the "Commoners of Salisbury" by an indenture recorded at the Essex South District registry of deeds. The summary judgment record does not reveal how title to Salisbury Beach passed from the "Commoners of Salisbury" to Salisbury Land and Improvement Company, which filed the petition for registration, or to Salisbury Beach Associates, which received the certificate of title.

[4]In 1933, Salisbury Beach Associates conveyed the length of Salisbury Beach (not including the locus or the other lots shown on the 1920 plan) to the Commonwealth, which obtained a transfer certificate of title for land depicted on a third plan. The certificate states, "[a]ll . . . boundaries [depicted on the plan], except the water lines, are determined by the Court to be located as shown upon [the plan]. . . . Said land is also subject to rights of way thereover between the respective lots shown on said plan and the Ocean . . . ." Designating the locus "8th St. East," the plan shows the locus lying "between the respective lots . . . and the Ocean." The plan demarcates the westerly boundary of the beach with a solid line, indicating an easterly boundary for the locus.

certificate of title that included verbatim the language of the deed.[5]

In 1996, the chief title examiner for the Land Court wrote a letter to the trust, alerting it that "[t]here are problems with this case. Registered land can only be conveyed by reference to a lot on a Land Court Plan. [The transfer certificate of title] should not have been issued. A Stop Order has been entered at the local registry and [no] further document will be accepted on this certificate of title." The letter continued, "You should file a plan with our Engineering Department delineating this area as a lot on a plan. After the Engineering Department has accepted your plan for filing, you may consider this petition as a petition for approval of said plan."

The trust filed a petition in the Land Court, seeking the approval of a plan eliminating the reference to the locus as a street and designating the locus as a bounded numbered lot, and also seeking the issuance of a new certificate of title for the locus.[6] Between 1998 and 2001, several abutters, the Commonwealth, and the town of Salisbury (defendants) filed answers or objections to the trust's petition. In 2002, the trust moved for summary judgment, and the defendants filed oppositions and cross motions for summary judgment. After hearing oral argument on the motions, a Land Court judge issued a written decision denying the trust's motion, granting the defendants' cross-motions, and ordering the entry of a judgment dismissing the petition.[7]

In his decision, the judge held that the transfer certificate was

---

[5]If the assistant recorder had examined the plan referenced in the deed and incorporated in the transfer certificate of title, he would have discovered, among other things, that the plan delineated no westerly or easterly boundaries for the locus, contrary to the description. There is no evidence in the record to explain the source of the description's misrepresentation or the reason for the failure of the trust or the assistant recorder to address the issue.

[6]The original petition was filed in 1996. An amended petition was filed in 1997, and a second amended petition was filed in 1998. The second amended petition sought the approval of a plan revised on June 8, 1998, drawn by Pembroke Land Survey Company, depicting an area of land measuring 11,184 square feet between blocks G and H as shown on the 1920 plan.

[7]Because the case was before the judge on motions for summary judgment and the petition requested no declaratory relief, the final judgment did not include a formal declaration with respect to the validity of the transfer · certificate of title held by the trust.

invalid based on his finding of two significant errors in its issuance. First, the judge found that "the court never authorized the Essex South District [registry of deeds] to issue a certificate for the locus," because the instructions on the 1920 plan "are unambiguous that the assistant recorder, after receiving a deed of conveyance[,] could issue certificates of title for the numbered lots" on the plan and the locus was not such a lot. See G. L. c. 185, § 64 (after "owner desiring to convey his registered land . . . execute[s] a deed of conveyance" and presents deed to assistant recorder, "assistant recorder shall thereupon, *in accordance with the rules and instructions of the court,* make out in the registration book a new certificate of title to the grantee" [emphasis added]). Second, the judge found that the language of the 1992 deed reciting that all of the locus's boundaries "are determined by the Court to be located as shown upon" the 1920 plan was "clearly erroneous," and the assistant recorder "acted outside of his authority [in] issu[ing the transfer certificate] incorporating such language." The judge rejected the trust's arguments in favor of its petition for approval of a new plan, which he concluded were "predicated upon the validity of" the transfer certificate.

The trust appealed from the judgment, and we transferred the case from the Appeals Court on our own motion.

2. *Land Court's authority to examine validity of transfer certificates of title.* "[T]he underlying purpose of title registration is to protect the transferee of a registered title." *Wild* v. *Constantini,* 415 Mass. 663, 668 (1993), quoting *Kozdras* v. *Land/Vest Props., Inc.,* 382 Mass. 34, 44 (1980). To that end, G. L. c. 185, § 45, provides that a decree of registration "shall be conclusive upon and against all persons . . . [and] shall not be opened . . . by any proceeding at law or in equity for reversing judgments or decrees." Similarly, G. L. c. 185, § 46, provides that "every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate." Original and transfer certificates of title are "conclusive as to all matters contained therein," except as otherwise provided in the statute. G. L. c. 185, § 54. *Michaelson* v. *Silver Beach Improvement Ass'n,* 342 Mass. 251, 260

(1961). This case requires us to decide whether these statutory protections shield the trust's transfer certificate of title from review by the court, where the certificate was erroneously issued by an assistant recorder.

The trust contends that G. L. c. 185 contains no provision for the invalidation of a certificate of title to registered land subsequent to its issuance (in the absence of fraud); that this was not a legislative omission; and that there is thus no authority for a Land Court judge to rule on the validity of its transfer certificate of title. We disagree. The statute and our decisions interpreting its demands support the proposition that a Land Court judge has the authority, and indeed the obligation, to examine the validity of transfer certificates for registered land, where there are errors on the face of those certificates readily ascertainable from existing records referred to thereon in the land registration system.

The statute itself provides a mechanism for a Land Court judge, on the motion of a party, to correct errors and omissions in certificates of title after their issuance.[8] General Laws c. 185, § 114, allows a "registered owner or other party in interest" (including an assistant recorder[9]) to bring a motion in the Land Court requesting the court order changes to certificates when interests in the land described on the certificate change or

_____

[8]In the first instance, the statute seeks to avoid the issuance of erroneous certificates by assistant recorders by providing for their supervision by the Land Court through general rules of procedure and case-specific instructions on certificates. General Laws c. 185, § 64, provides that "[a]n owner desiring to convey his registered land . . . in fee shall execute a deed of conveyance, which the grantor or grantee may present to the assistant recorder in the district where the land lies. The assistant recorder shall thereupon, *in accordance with the rules and instructions of the court*, make out in the registration book a new certificate of title to the grantee" (emphasis added). In *Tyler* v. *Judges of Court of Registration*, 175 Mass. 71, 80-81, appeal dismissed, 179 U.S. 405 (1900), this court described the "ordinary business of registration" as "very nearly ministerial," but indicated that "[i]f there is a question, either raised by any party in interest or occurring to the assistant recorder, it is to be referred to the judge for decision. [St. 1898, c. 562, § 53, codified at G. L. c. 185, § 60.] . . . [E]ven the ordinary business is to be done only 'in accordance with the rules and instructions of the court.' " *Id.*, quoting St. 1899, c. 131, § 8, codified at G. L. c. 185, § 64.

[9]Assistant recorders are parties in interest for the purpose of this provision. *Assistant Recorder of N. Registry Dist. of Bristol County* v. *Spinelli*, 38 Mass. App. Ct. 655, 657-658 (1995).

terminate; new interests are created; the names or marital status of owners change; a certificate-holding corporation does not convey the land within three years of dissolution; "any error or omission was made in entering a certificate or any memorandum thereon"; or for "any other reasonable ground."[10] In response, a judge may "hear and determine the motion after notice to all parties in interest, and may order the entry of a new certificate, the entry or cancellation of a memorandum upon a certificate, or grant any other relief upon such terms . . . as it may consider proper." *Id.* The statute adds an important limitation: "this section shall not authorize the court to open the original judgment of registration,[11] and nothing shall be done or ordered by the court which shall impair the title or other interest of a purchaser holding a certificate for value and in good faith, or his heirs or assigns, without his or their written consent." *Id.*

The trust argues that this provision does not provide a Land Court judge with a statutory route to consider the validity of a transfer certificate of title in the circumstances of this case. Specifically, it contends that the judge's power cannot come from G. L. c. 185, § 114, because that provision expressly protects a good faith purchaser for value who holds a certificate for registered land from impairments or derogations of title, and permits only the correction of a certificate and not its invalidation. Citing the legislative intent of G. L. c. 185 to make title to registered land certain and indefeasible, the trust asserts that the assistant recorder's actions bind the court.

We have previously concluded that the statutory scheme set out in G. L. c. 185 does not protect all purchasers in every

---

[10]The procedural posture of this case is different than that of a proceeding contemplated by G.L. c. 185, § 114, because the judge acted here on his own motion to review the trust's transfer certificate of title in the context of the trust's petition for approval of a plan confirming the boundaries of the locus described on its certificate. Therefore, as a technical matter, the judge was not acting in this case on a petition under G. L. c. 185, § 114. We conclude that the procedural posture of the case is of no consequence. See *infra.*

[11]The limitation of G. L. c. 185, § 114, that the Land Court may not "open an original judgment of registration" is not applicable here. The trust's transfer certificate of title is distinct from the original judgment of registration for the locus, which was the 1913 Land Court decree obtained by Salisbury Beach Associates officially bringing the locus within the ambit of the land registration system. See *Ward* v. *Prudential Ins. Co.*, 299 Mass. 559, 564 (1938).

circumstance. For example, we have recognized two exceptions to the rule that holders of a certificate of title take "free from all encumbrances except those noted on the certificate." G. L. c. 185, § 46. "If an easement is not expressly described on a certificate of title, an owner, in limited situations, might take his property subject to an easement at the time of purchase: (1) if there were facts described on his certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) if the purchaser has actual knowledge of a prior unregistered interest." *Jackson* v. *Knott*, 418 Mass. 704, 711 (1994). These exceptions prevent the protection of a purchaser who knows or should have known about an existing encumbrance on his or her land, which was not reflected on the certificate of title. Such a purchaser cannot be said to have taken the land "in good faith" under G. L. c. 185, § 46, see *Killam* v. *March*, 316 Mass. 646, 651 (1944), and should not be allowed to benefit from an error in official records to which the purchaser contributed, whether through inattention or an intentional failure to disclose. See, e.g., *Wild* v. *Constantini*, 415 Mass. 663, 669 (1993) (exception for owner with actual notice "has not served to cast a cloud over registered titles . . . [but] has served to integrate fairness and justice into a system designed to promote certainty of title at the expense, in some instances, of equity"); *Kozdras* v. *Land/Vest Props., Inc.*, 382 Mass. 34, 45 (1980) ("Land Registration Act is a system of conveyancing, not a means of defrauding rightful owners of their property. . . . It does not permit registrants to ignore official records which are not defective").

These considerations apply with equal force to purchasers, like the trust, who seek to obtain a transfer certificate of title for registered land. Prior to the submission of a deed of conveyance to the assistant recorder, anyone who seeks the protection of G. L. c. 185 must fulfil his or her obligation to "investigate further other certificates of title, documents, or plans in the registration system" that are referenced on existing certificates of title for the land to be purchased. *Jackson* v. *Knott, supra* at 711. The failure to fulfil that obligation need not be fraudulent for the purchaser to lose his or her claim to certainty of title.

Moreover, the error correction provision of G. L. c. 185, § 114, entails broader judicial scrutiny of issued certificates of title than the trust claims and allows the cancellation of erroneously issued certificates. The grounds for a motion to correct a certificate of title extend to "any error or omission . . . made in entering a certificate or any memorandum thereon" and "any other reasonable ground." On such a motion, the Land Court has authority to order the "entry of a new certificate," the "entry or cancellation of a memorandum upon [an existing] certificate," or "grant any other relief" the court deems proper. By its terms, the statute grants a Land Court judge broad powers to correct errors "made in entering a certificate" including, we conclude, the power to cancel certificates issued in error in certain circumstances.[12] The defect in the trust's transfer certificate in this case lies within the category of errors a judge could correct in a § 114 proceeding, and the validity of the certificate was appropriately considered by the judge in the circumstances of the case. See *Assistant Recorder of N. Registry Dist. of Bristol County* v. *Spinelli*, 38 Mass. App. Ct. 655, 657 (1995) (Land Court has strong interest in maintaining accurate records).

The statute's near absolute protection afforded to purchasers in good faith is no bar to the judge exercising his authority here. The alleged error on the trust's certificate appears on its face, in the language incorporated from the trust's deed. The language specifically refers to the 1920 plan for the land, which is a part of the county's land registration records and was readily accessible to the trust. See *Jackson* v. *Knott, supra* at 711 ("If a plan is referred to in the certificate of title, the purchaser would be expected to review that plan"). Where the certificate's issuance was in fact inconsistent with the court's instructions on the

---

[12]With a flawed analogy to the law of agency, the trust argues that the assistant recorder's actions in issuing the transfer certificate for the locus bind the court, as the assistant recorder has apparent authority. This claim is without merit given a judge's authority to correct errors such as the erroneous issuance of a certificate under G. L. c. 185, § 114. Cf. *Boston* v. *Back Bay Cultural Ass'n*, 418 Mass. 175, 184 (1994), quoting *White Constr. Co.* v. *Commonwealth*, 11 Mass. App. Ct. 640, 647 (1981), *S.C.*, 385 Mass. 1005 (1982) ("Officers of governmental agencies have authority to bind their governmental bodies only to the extent conferred by the controlling statute").

1920 plan (and the description in the deed inaccurate as well), the trust cannot rely on the assistant recorder's error to shield the certificate from later scrutiny in the Land Court, particularly when the judge is hearing a petition by the trust that, in essence, seeks to confirm the suspect terms of the certificate in a new plan for the land. Cf. *Kozdras* v. *Land/Vest Props., Inc.*, *supra* at 45 ("A petitioner in the Land Court who fails to disclose a major discrepancy between the plan submitted and official records may not profit from such nondisclosure. There is no integrity in a system which permits petitioners to submit their own plans to the Land Court knowing they are in variance with official record and then reap benefits at the expense of those who rely on the integrity of the submitted plan"). In this context, the trust had at least constructive notice of the error and, therefore, does not enjoy the status of a purchaser holding its certificate in good faith. See *New York Life Ins. Co.* v. *Embassy Realty Co.*, 293 Mass. 352, 355 (1936).

The trust sounds the alarm that allowing the judge to examine the validity of a transfer certificate of title in these circumstances will send the land registration system into disarray and undermine its purposes. However, "[a]s the present case does not involve . . . a bona fide purchaser, our decision does not contravene the legislative purpose" of G. L. c. 185. *Wild* v. *Constantini, supra* at 668. See *Kozdras* v. *Land/Vest Props., Inc., supra* at 45, quoting *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 107 (1967) ("It is not a purpose of the system to afford those who deal with registered land in bad faith any greater protection than they would have in similar dealings with unregistered land"). Insofar as an assistant recorder, as a party in interest, may file a petition in the Land Court under G. L. c. 185, § 114, to invalidate a certificate of title for registered land on precisely these facts, a judge's consideration of the validity of such a certificate on his own motion will have no greater impact on the certainty of title to registered land in the Commonwealth than the statute's provision for correction of errors embodied therein. What is at stake is the power of the court to protect and ensure the integrity of its recording system and not merely the private rights of the parties. See *Trustees of Boston & Maine Corp.* v. *Massachusetts Bay Transp. Auth.*, 367

Mass. 57, 62 (1975), *S.C.*, 372 Mass. 858 (1977), quoting *Atkins* v. *Sawyer*, 1 Pick. 351, 354 (1823), and *Webb* v. *Cohen*, 280 Mass. 292, 293 (1932) ("[O]ver 150 years ago this court regarded it as 'a well settled rule, that any mistake arising from the misprision of the clerk may be amended and set right.' . . . 'There is an inherent and necessary power in a court of justice acting . . . on its own motion to correct errors and remedy omissions in its records in order that they shall speak the truth' "). Whether a court acts on its own motion or on motion of a party, is, in these circumstances, of no consequence.

In sum, we conclude that by necessary implication from all of the provisions of the statutory scheme set out in G. L. c. 185, a Land Court judge has the authority to examine and rule on the validity of an issued transfer certificate of title, in the context of a petition for approval of a plan for the land by the purchaser, where the certificate is alleged to have been issued in error and the error is apparent on its face. While such authority would not permit the Land Court judge to act in contravention of specific limitations set forth in the statute, see *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't*, 432 Mass. 693, 702 (2000), he has not done so here.

3. *Validity of transfer certificate.* We now turn to the question whether the judge was correct that the trust's transfer certificate for the locus was issued in error and therefore is invalid. We see no error in the judge's ruling. On the 1920 plan, the locus was designated a street and had no easterly or westerly boundaries. The instructions on the face of the 1920 plan were clear: "Separate certificates of title may be issued for lot 362B and the numbered lots in Blocks G, H, O, P & Q as shown hereon." These instructions do not contemplate the issuance of certificates of title to areas on the plan, like the locus, that are designated streets.[13] The locus was not a numbered lot on the plan, and the assistant recorder issued the transfer certificate to the trust in

---

[13]In 1952, the town of Salisbury obtained a transfer certificate of title for a similar "paper street," located five hundred feet to the south of the locus and designated "9th St. East" on a plan approved one day before the approval of the 1920 plan. The town acquired "9th St. East" by eminent domain for the purpose of laying out a public way, providing a means of public access from the State highway to Salisbury Beach. As a part of its argument on appeal from the judgment of the Land Court, the trust claims that its transfer

contravention of these instructions.[14] See G. L. c. 185, § 64. In addition, the language of the trust's deed, incorporated into the transfer certificate, describes easterly and westerly boundaries for the locus that were never fixed by the court, in the 1920 plan or otherwise, and then misrepresents that all of the boundaries "are determined by the Court to be located as shown upon" the 1920 plan. These two errors are clear from the face of the 1920 plan and the transfer certificate of title, and the Land Court judge appropriately concluded that the transfer certificate was erroneously issued and could not support the trust's petition for approval of a plan for the land.

4. *Conclusion.* The judgment of the Land Court dismissing the trust's petition is therefore affirmed.

*So ordered.*

---

certificate of title for the locus should be deemed authorized because of this 1952 transfer certificate of title. The town has moved to strike all references to "9th Street East" from the trust's brief and appendix on appeal. Because the trust did not present any argument related to "9th Street East" to the Land Court judge and he never had before him the validity of the town's 1952 transfer certificate of title, we deem the argument waived, do not consider it, and thus need not rule on the town's motion to strike.

[14]Given the explicit nature of these instructions, whether or not the locus was legally a "lot" in some abstract sense is irrelevant to the validity of the trust's transfer certificate.