THE COLONY OF WELLFLEET, INC. *vs.* EDITH KEYES HARRIS
& others.[1]

No. 07-P-287.

Suffolk. December 12, 2007. - April 7, 2008.

Present: CYPHER, GREEN, & MEADE, JJ.

*Real Property,* Registered land, Certificate of title. *Land Court,* Judicial
discretion. *Agency,* Ratification. *Laches.*

In an action in Land Court brought by a plaintiff landowner, requesting that
the court expunge a 1978 deed transferring title to a certain property to the
defendant, the judge did not err in declining to expunge the deed, despite
finding that the defendant was not a purchaser in good faith, where the
language of G. L. c. 185, § 114, provided flexibility to the judge in decid-
ing what relief to grant [526-528]; where the protections granted by § 114
to the plaintiff, as a good faith purchaser of the property in question in
1963, did not extend to the 1978 transaction [528]; and where the judge
correctly found that the plaintiff had ratified the 1978 deed to the defendant
[528-531] and had engaged in unjustified, unreasonable, and prejudicial
delay in bringing its claim [531-532].

CIVIL ACTION commenced in the Land Court Department on
May 17, 2002.

The case was heard by *Alexander H. Sands,* J.

*Peter S. Farber* for the plaintiff.

*Duane P. Landreth* for the defendants.

CYPHER, J. The Colony of Wellfleet, Inc. (the Colony), ap-
peals from a judgment of the Land Court denying the Colony's
request that the court expunge a 1978 deed transferring title to a
cottage and the land upon which it is located (lot 49) to Edith
Keyes Harris. The Colony argues that the Land Court judge
(1) had a duty under G. L. c. 185, § 114, to expunge an errone-

[1]Robert Metcalf, individually and as coexecutor of the estate of Edith
Keyes Harris; and Douglas Metcalf, as coexecutor of the estate of Edith
Keyes Harris.

ous registration of a deed in fee where the transferee was not a purchaser in good faith; (2) committed an error of law in ruling that the Colony ratified the 1978 deed in 1983; and (3) erred in finding the Colony guilty of laches. We affirm.

*Background.* A judge in the Land Court found the following facts, which we accept unless they are clearly erroneous. Mass. R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 509 (1997), quoting from *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160 (1977).

On November 22, 1963, the Colony purchased registered land from the Mayo Hill Colony, Inc. The land housed nine cottages which were rented seasonally. At the time of the purchase, Loris Stefani (Loris) was the sole shareholder of the Colony, although he operated the cottage colony with Eleanor Stefani (Eleanor).[2]

The Colony was often subject to financial problems. As a result, it fell behind on mortgage payments and foreclosure proceedings were commenced. On October 30, 1970, Loris transferred certain real estate and stock to his sons, Marco and Paul Stefani, and to Attorney Charles E. Frazier, Jr., as part of a refinancing to avoid foreclosure. This transaction provided that upon payment of the existing mortgages, title to lot 17 and the stock of the Colony would be returned to Loris. The plan further provided for lot F-10 to be subdivided, with authority for the lots to be sold. On December 9, 1971, a judge of the Land Court approved a partial subdivision plan of lot F-10, resulting in the creation of lots 39 to 52. On September 30, 1972, the Colony's stockholders and officers voted (the vote) to authorize Frazier to sell the lots for a period of five years from that date. In accordance with his authority as granted by the vote, Frazier sold six lots between October 21, 1972, and December 1, 1975,

---

[2]At the time of the purchase, Eleanor Stefani still went by the name Eleanor Sallen. She later adopted the surname "Stefani," though Loris and Eleanor were never married.

one of which was the sale of lot 40 to Harris on April 30, 1975.[3]

On November 1, 1976, Loris commenced actions in Superior Court (the suit) against his sons and Frazier to recover his stock and lot 17. Loris died on January 26, 1978, and William E. Crowell, Jr., the executor of his estate, was substituted as the plaintiff in the suit. Upon his death, Loris left all of his interest in the Colony to Eleanor.

In the summer of 1978, Harris spoke to Eleanor regarding the purchase of cottage 10B, which stands on lot 49. Eleanor told Harris that there could be no sale of the cottage due to the outstanding court case. After Harris's conversation with Eleanor, Harris approached Frazier and his attorney, Sidney Dockser, and was told that lot 49 was for sale at a price of $40,000.

On August 18, 1978, the Colony and Harris signed a purchase agreement for the sale of lot 49 for the sum of $40,000. Eleanor learned of the sale of lot 49 shortly after the purchase and sale agreement was signed. Lot 49 was conveyed to Harris by deed dated October 7, 1978. The proceeds from the sale were used to pay operating costs of the Colony.

Dockser represented Loris's estate and Eleanor in the suit. In 1978, Dockser advised Eleanor that the sale of lot 49 to Harris was final. As the suit continued, Eleanor hired new counsel, Judith Bowman and Paul Counihan, both of whom were retained during the summer of 1979. Many times during the suit and after the trial in 1979, Eleanor asked Bowman and Counihan if there was anything she could do regarding lot 49, which she asserted Harris had "stolen." Based on those conversations, Eleanor concluded that the sale of lot 49 was final.

On October 22, 1979, a Superior Court judge decided in favor of Loris's estate, and ordered that the stock in the Colony and lot 17 be held in trust for the benefit of Loris's estate. The ownership of lot 49 was not raised in the suit.

In 1983, a dispute arose between the Colony and Harris over the ownership of lot 49. Eleanor hired Bowman as her counsel, and was again advised that the sale of lot 49 to Harris was final. This dispute never resulted in a court action, and was not otherwise resolved.

---

[3] Lot 40 is not the lot at issue in this case.

Frazier died before this current Land Court action was initiated. Harris was ninety-nine years old when this action was initiated, and died before trial.

*The Land Court case.* The Colony argued before the Land Court that Frazier lacked corporate authority to execute the deed to Harris and, as a result, the transfer certificate was issued in error and should be subject to the provisions of G. L. c. 185, § 114. Harris argued that Frazier and Dockser told Harris that they had the authority to sell lot 49 and that Frazier was acting with apparent authority when he executed the deed.

The trial judge first noted that the vote authorizing Frazier to sell the lots expired on September 30, 1977; therefore the deed, which was dated October 7, 1978, was not valid because Frazier did not have actual authority to sell lot 49. Frazier's express authority to sell the lots owned by the Colony was limited by the fact that Frazier was only empowered to sell the lots for a duration of five years. Once that five-year window had closed, Frazier lacked actual authority to sell any of the lots owned by the Colony.

Having concluded that Frazier did not have actual authority to sell lot 49, the trial judge addressed the issue of apparent authority and found that Harris could not have held a reasonable belief that Frazier had authority to execute the deed. Harris had spoken with Eleanor about the possibility of purchasing one of the units on lot 49, and had been informed that no land could be sold due to the dispute as to the ownership of the Colony, the subject of a pending action in Superior Court. The trial judge concluded that without a reasonable belief on the part of Harris that Frazier had the authority to sell lot 49, the doctrine of apparent authority did not apply.

The trial judge determined that the Colony qualified as a "person in interest" under G. L. c. 185, § 114, and as such was permitted to bring a petition in the Land Court to correct the error of the recorder in issuing the transfer certificate for the deed despite Frazier's lack of corporate authority to continue to sell lots on behalf of the Colony.

The trial judge found that Harris was not protected from the provisions of § 114 because she was not a "purchaser in good

faith."[4] As such, the trial judge concluded that the Land Court was authorized to cancel the certificate.[5]

The Land Court judge concluded that the October 7, 1978, deed to Harris was executed by Frazier after his authority under the 1972 vote had expired, and as such, the provisions of G. L. c. 185, § 114, apply. Accordingly, the Land Court had the authority to cancel the certificate; however, while Harris's deed was originally defective because it was not properly executed, the judge concluded that the Colony ratified the deed as of 1983, and that the Colony's claims were barred by laches.

*Discussion.* 1. *General Laws c. 185, § 114.* Section 114, as amended by St. 1996, c. 481, § 20, states in part as follows.

"A registered owner or other person in interest may apply by motion [for an erasure, alteration or amendment to a certificate of title] to the court upon the ground that . . . any error or omission was made in entering a certificate or any memorandum thereon; or . . . upon any other reasonable ground; . . . and [the court] may order the entry of a new certificate, . . . or grant any other relief upon such terms, requiring security if necessary, as it may consider proper; but this section shall not authorize the court to open the original judgment of registration, and nothing shall be done or ordered by the court which shall impair

---

[4]The Supreme Judicial Court has held that "the statutory scheme set out in G. L. c. 185 does not protect all purchasers in every circumstance . . . [and] anyone who seeks the protection of G. L. c. 185 must fulfil his or her obligation to 'investigate further other certificates of title, documents, or plans in the registration system' that are referenced on existing certificates of title for the land to be purchased . . . . The failure to fulfil that obligation need not be fraudulent for the purchaser to lose his or her claim to certainty of title." *Doyle* v. *Commonwealth*, 444 Mass. 686, 692-693 (2005). In the case at bar, Harris did not fulfil this requirement. The authority granted to Frazier by the vote was listed on the memoranda of encumbrances, and it would have been clear that Frazier's authority to sell lots on behalf of the Colony had lapsed more than a year prior to the conveyance to Harris. Because Harris at least had constructive knowledge of the error, she was not a purchaser in good faith, and her case falls under the rationale of *Doyle.*

[5]"[T]he Land Court has authority to order the 'entry of a new certificate,' the 'entry or cancellation of a memorandum upon [an existing] certificate,' or 'grant any other relief' the court deems proper. By its terms, [G. L. c. 185] grants a Land Court judge broad powers to correct errors 'made in entering a certificate' including . . . the power to cancel certificates issued in error . . . ." *Doyle* v. *Commonwealth, supra* at 694.

the title or other interest of a purchaser holding a certificate for value and in good faith, or his heirs or assigns, without his or their written consent."

a. The Colony argues that, having concluded that Frazier had no authority to execute the deed to Harris and that Harris was not a purchaser in good faith, the trial judge was required by § 114 to cancel Harris's certificate and restore title to the Colony, and that failure to do so undermines the purpose of the land registration system.

We are not persuaded that permitting a certificate of title to remain with a party who was not a "purchaser in good faith" defeats the purpose of the land registration system. "[T]he underlying purpose of title registration is to protect the transferee of a registered title." *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 44 (1980). This purpose is not defeated by permitting the court to exercise discretion in crafting equitable relief allowing the transferee to maintain possession of a certificate of title where the transferor ratified the deed or where the transferor was guilty of laches.

The argument that the Land Court has no discretion under § 114 is not supported by the language of the statute. A close reading of § 114 leads to the conclusion that this section is intended to be permissive and to provide the court with flexibility in determining relief: the court "*may* order the entry of a new certificate . . . or grant any other relief . . . as it *may* consider proper" (emphasis added). G. L. c. 185, § 114. Section 114 explicitly says that the court has the authority to grant such relief as it deems proper. Such language leads to the conclusion that § 114 was meant to provide flexibility to the judge in deciding what relief to grant: "By its terms, [G. L. c. 185, § 114,] grants a Land Court judge broad powers to correct errors 'made in entering a certificate.' " *Doyle* v. *Commonwealth*, 444 Mass. 686, 694 (2005). Furthermore, the use of the word "may" denotes a discretionary power. Massachusetts law has consistently held that the word "may" in a statute "is a word of permission and not of command." *Cline* v. *Cline*, 329 Mass. 649, 652 (1953). The trial judge therefore correctly determined that he had the authority to cancel the certificate, but did not have an affirmative mandate to do so.

Although the judge found the rationale of *Doyle* to be controlling in determining that Harris was not a "good faith purchaser," he had discretion within § 114 to consider other factors, such as whether the Colony ratified the deed, or whether there is a laches concern in this case.

b. The final clause of G. L. c. 185, § 114, states that "nothing shall be done or ordered by the court which shall impair the title or other interest of a purchaser holding a certificate for value and in good faith, or his heirs or assigns, without his or their written consent."

The Colony argues that (1) it is a good faith purchaser holding a certificate as a result of its purchase from the Mayo Hill Colony, Inc., in 1963; (2) the Land Court decision impairs its title; and (3) it never gave written consent as required under § 114, thereby requiring reversal of the judge's decision.

The Colony was a purchaser holding a certificate for value and in good faith resulting from the transaction with the Mayo Hill Colony in 1963; however, the protections granted to the Colony through § 114 as a good faith purchaser in 1963 do not extend to the transaction between the Colony and Harris in 1978. Following the 1978 transaction, the Colony no longer held the certificate to lot 49. The Colony is more aptly described as a "person in interest," rather than a "purchaser in good faith" with respect to the transaction in 1978. The Colony's certificate for lot 49 was canceled in 1978, at which time Harris became the new holder of the certificate; Harris, not the Colony, was the "purchaser" for purposes of § 114.[6]

2. *Ratification.* The Colony argues that the Land Court judge committed an error of law in ruling that the Colony ratified the 1978 deed to Harris based on a theory of constructive knowledge. We disagree.

A principal may be bound by an agent's unauthorized acts if the principal expressly or impliedly ratifies the agent's acts. See

---

[6]Despite the fact that Harris was not found to be a "purchaser in good faith," she was still the purchaser of the certificate. The trial judge merely found that Harris was not in "good faith" because the authority granted to Frazier by the vote was listed on the memoranda of encumbrances, and it would have been clear that Frazier's authority to sell lots on behalf of the Colony had lapsed more than a year prior to the conveyance to Harris.

*Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 18, cert. denied, 522 U.S. 1015 (1997). Ratification may be effected by the principal's express declaration or inferred from his actions, including failure to repudiate an act. In order to establish ratification it generally must be shown that the principal had "full knowledge of all material facts." *Perkins* v. *Rich*, 11 Mass. App. Ct. 317, 322 (1981), quoting from *Combs* v. *Scott*, 12 Allen 493, 496 (1866). However, the law does not allow one to "purposefully shut his eyes to means of information within his own possession and control, having only that knowledge which he cares to have" (citations omitted). *Perkins, supra.* Ratification is essentially a question of fact that will be reversed only if clearly erroneous. *Diep Bui* v. *Ha Ma*, 62 Mass. App. Ct. 553, 565 (2004).

Although the Land Court judge ultimately decided the issue of ratification with respect to Eleanor, the judge also noted that Marco and Paul were shareholders of the Colony when Frazier conveyed lot 49 to Harris in 1978, and there was no evidence that they objected to the receipt of the proceeds from the sale. This court will affirm a judgment as long as the result is correct on any ground apparent on the record that supports the result reached by the trial court. *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993).

If the principal benefits from the unauthorized act, "ratification may be implied pretty quickly from the lapse of time." *Brown* v. *Henry*, 172 Mass. 559, 567-68 (1899). In the case at bar, the money generated from the sale of lot 49 was vitally important to the Colony's financial health since it was used to pay operating expenses. The 1981 appeal from the Superior Court suit concluded that a trust was created in favor of Loris, and that Marco, Paul, and Frazier were the resulting trustees. See *Crowell* v. *Stefani*, 12 Mass. App. Ct. 966 (1981). As trustees, Marco and Paul were "held to the rule of good faith and due diligence." *Young* v. *Tudor*, 323 Mass. 508, 515 (1948). "[A] trustee must use his or her 'best informed judgment in good faith.' " *Fine* v. *Cohen*, 35 Mass. App. Ct. 610, 617 (1993), quoting from *Old Colony Trust Co.* v. *Silliman*, 352 Mass. 6, 10 (1967).

Despite the fact that Marco and Paul were later divested of

their positions as the principals of the Colony, the decisions they made at the time as trustees were in good faith, and were binding upon the Colony.[7] Furthermore, there is certainly no issue of knowledge about the lapse of authority granted to Frazier through the vote with respect to Paul and Marco. They authorized Frazier to sell the lots for a period of five years, and there is no reason to believe they did not know Frazier sold lot 49 to Harris after the expiration of that authority. The Colony ratified the deed in 1978 when Marco and Paul failed to repudiate the transaction and the Colony benefited from the proceeds from the sale.

Even if Marco and Paul were unable to ratify the actions of Frazier in 1978, the Land Court judge correctly determined that Eleanor ratified the deed in 1983. The trial judge found that ratification was implied by Eleanor's acts, including her failure to take any action. Ratification may be implied when a principal makes no effort to repudiate a transaction. See *Kelley* v. *Newburyport & Amesbury Horse R.R.*, 141 Mass. 496, 499-500 (1886). "Where an agent lacks actual authority to agree on behalf of his principal, the principal may still be bound if the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts." *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. at 18. When Eleanor became the principal in 1981, she was aware of the sale of lot 49 to Harris. In fact, she specifically asked her counsel during the suit and again in 1983 whether there was anything she could do with respect to the sale of that lot. After researching the issue, her counsel told her that there was nothing she could do. Even though this information may have been incorrect, Eleanor is not absolved by her agents' erroneous advice and the obligation of her agents to discover that which is clearly reflected in the memoranda of encumbrances filed with the certificate. In making this determination, the judge was not clearly erroneous because Eleanor's agents had knowledge of all of the material facts in this case. "If the purported principal has knowledge of facts which would lead a person of ordinary prudence to investigate further, and he fails to make such

---

[7]Moreover, the proceeds from the sale flowed through the accounting that occurred incident to the 1979 Superior Court judgment.

investigation, his affirmance without qualification is evidence that he is willing to ratify upon the knowledge which he has." Restatement (Second) of Agency § 91 comment e (1958).

By failing to repudiate the actions of Frazier within a reasonable time after gaining access to all the relevant material facts in 1983, Eleanor ratified the sale of lot 49 to Harris.

3. *Laches.* The Colony argues that the trial judge erred in finding the Colony guilty of laches. We disagree.

Laches is an "unjustified, unreasonable, and prejudicial delay in raising a claim." *Srebnick* v. *Lo-Law Transit Mgmt., Inc.*, 29 Mass. App. Ct. 45, 49 (1990). "Laches is not mere delay but delay that works disadvantage to another." *Moseley* v. *Briggs Realty Co.*, 320 Mass. 278, 283 (1946), quoting from *Calkins* v. *Wire Hardware Co.*, 267 Mass. 52, 69 (1929). However, there can be no laches where "there is no knowledge of the wrong committed and no refusal to embrace opportunity to ascertain facts." *Mosley, supra* at 284, quoting from *Stewart* v. *Finkelstone*, 206 Mass. 28, 36 (1910).

"The operation of laches generally is a question of fact for the judge, and a judge's finding as to laches will not be overturned unless clearly erroneous." *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 517 (2005). In the case at bar, the trial judge found that Eleanor told her attorneys many times that lot 49 was wrongfully taken from her and inquired about the possibility of getting the property back. The judge found that the delay in this case, twenty-three years, was unreasonable given the circumstances. The trial judge's findings were not clearly erroneous in concluding that the delay was unreasonable where Eleanor's attorneys were specifically asked about her rights in lot 49 and the vote was recorded on the memoranda of encumbrances.

The trial judge further found that the defendants were prejudiced by the delay in that the defense's main witness, Harris, died before trial. Frazier, another witness, also died before trial and was unable to add his testimony to the evidence at trial. The fact that several key witnesses died before this case was tried could certainly have prejudiced the defendant. These findings are not clearly erroneous.

Finally, the trial judge concluded that the Colony, like Harris,

knew the facts pertaining to the deed and had access to the records to discover the vote and the limitation of Frazier's authority to execute the deed. The trial judge deemed the Colony to have sufficient knowledge of the material facts to have made the delay in this case unjustified. This conclusion stems from the fact that Eleanor specifically inquired about her rights in lot 49 during the suit, and again in 1983. Her counsel had every opportunity to discover the vote and any rights stemming therefrom. This finding is not clearly erroneous.

For all of these reasons, the trial judge's findings that the Colony ratified the deed as of 1983, and was guilty of laches, were not clearly erroneous. Accordingly, the judgment is affirmed.

*So ordered.*