RAYMOND CORNELL & another[1] *vs.* ROLAND M. MICHAUD & others.[2]

No. 09-P-2184.

Worcester. November 9, 2010. - May 31, 2011.

Present: COHEN, MILLS, & HANLON, JJ.

*Zoning,* Timeliness of appeal, Enforcement, Person aggrieved. *Laches.*

In the circumstances of a complaint brought in Superior Court pursuant to G. L. c. 40A, § 17, and G. L. c. 249, § 5, by plaintiffs challenging a building permit purportedly obtained by the defendant, there was no merit to the defendant's argument that the court lacked jurisdiction over the matter because the plaintiffs did not timely appeal (i.e., within thirty days) to the local zoning board of appeals from the purported issuance of the building permit, where the permit was void, given that it was based on a clandestine agreement made in excess of the building inspector's authority and in contravention of both a binding Superior Court judgment and the town zoning by-law, and where the plaintiffs therefore properly resorted to the six-year remedy in G. L. c. 40A, § 7, which the plaintiffs timely sought [612-614]; further, there was no merit to the defendant's argument that the affirmative defense of laches applied to bar the plaintiffs' claim for equitable relief [615-616].

In the circumstances of a complaint brought in Superior Court pursuant to G. L. c. 40A, § 17, and G. L. c. 249, § 5, by plaintiffs challenging a building permit purportedly obtained by the defendant, who had begun construction of a large single-family home on his adjacent land, the judge's determination that the plaintiffs qualified as "persons aggrieved" was not clearly erroneous, where the record contained ample evidence of the intrusive construction on the lot in question and of the undisputed fact that the proposed structure would increase the existing dimensional nonconformity on that lot [614-615]; finally, the judge appropriately ordered that the house be removed and the land be restored to its condition prior to the construction, given that the defendant began construction with ample notice of the nonconformity and a prior adverse judicial action [616].

CIVIL ACTION commenced in the Superior Court Department on December 9, 2005.

[1]Marcia Cornell.

[2]Zoning board of appeals of the town of Blackstone and Gerald D. Rivet, in his official capacity as building inspector for the town of Blackstone.

The case was heard by *John S. McCann,* J.

*Howard P. Speicher* for Roland M. Michaud.

*Gerald M. Moody* for the plaintiffs.

MILLS, J. The plaintiffs, Raymond and Marcia Cornell (collectively, the Cornells), reside in their home at the edge of Harris Pond in Blackstone. The defendant Roland M. Michaud (Roland)[3] purportedly obtained a building permit for and began construction of a large single-family home on his adjacent land. A Superior Court judge, on the Cornells' complaint pursuant to G. L. c. 40A, § 17 (zoning appeal), and G. L. c. 249, § 5 (mandamus), ordered that the house be removed and the land be restored to its condition prior to the construction. Roland appeals. We affirm.

1. *The land.* Prior to the adoption of zoning in the town of Blackstone (town), land at the edge of Harris Pond was divided into lots, and Edgewater Drive was created to provide some access to some of the lots. This case concerns land that was historically lots 33, 47, 48, and 49,[4] as shown on the sketch plan (plan) adapted from a trial exhibit and attached as an Appendix to this opinion. Lots 33, 47, and 48 remained separate lots until 1986, when the three lots were reconfigured into two lots. The land area that was lot 48 (historic lot 48), which no longer exists as a separate lot, is nonetheless the principal concern of this appeal.

Historic lot 48 was conveyed to Roland on June 21, 1985. At that time, the lot contained a modest structure, once used as a residence but abandoned for several years. On May 20, 1985, Roland and his wife, Suzanne, conveyed lot 33 to Roland's father, also Roland Michaud (father). The father held title until 1990, when he reconveyed the land to Roland and Suzanne.[5]

On May 16, 1986, an application for variance relief was filed with the zoning board of appeals (board) of the town of Black-

---

[3]For ease of reference, after initial identification, we refer to the several Michauds in this case by their first names.

[4]For all times relevant to this appeal, the Cornells have owned and lived in their home on lot 49.

[5]Unchallenged was the judge's finding that during the pertinent periods of time in question, there were two parcels owned by Roland, or Roland and his wife, Suzanne, identified as contiguous lots 47 and 33 on the plan.

stone seeking to reconfigure three lots, 33, 47 and 48, into two separate lots. The application referred to "premises located on Edgewater Drive," without reference to lot numbers. The application document was filled out by Roland, although his father was the nominal applicant and actually signed it. Variance relief was requested "to . . . realign what is currently three lots with two blding [*sic*] to two lots with two single family residences." At that time historic lot 48 still contained the small abandoned building, lot 47 contained a capped foundation, and lot 33 was vacant. As of the date of the variance application, the record holders of title were as follows: lot 33, the father; lot 47, Roland and Suzanne; and lot 48, Roland.

The board granted the variance on June 11, 1986, allowing the reconfiguration of three lots into two buildable lots, subject to a condition that the abandoned building on historic lot 48 be removed. That building was not removed. The variance was not recorded. However, Roland completed construction of, and sold a house on, historic lot 47. He also built a two-family home (not a permitted use, with no zoning exemption) on historic lot 33.

On May 20, 1987, Roland purported to convey historic lot 48 as a separate lot to his brother, Ernest E. Michaud. In 1990, Ernest conveyed this lot to his nephew, Norman W. Michaud. Norman is the son of Roland.

2. *The 2000 Superior Court judgment.* In a related case, the Superior Court entered a final judgment in 2000 that conclusively determined, as to the parties to this case, that historic lot 48 is not a buildable lot. In that case, the town's building inspector[6] issued a permit for construction on historic lot 48 in February, 1995. Less than a month later, he rescinded the permit on the stated ground that the abandoned building had not been removed as required by the 1986 variance.

Norman applied to the board for a special permit on May 10, 1996, seeking to construct a single-family residence, or an addition to the existing building, on historic lot 48. The board denied the request on the grounds that the building was not a dwell-

[6]The predecessor of defendant Gerald D. Rivet. Rivet testified that he became building inspector in December, 1995.

ing,[7] and that historic lot 48 was nonconforming, that is, not a buildable lot pursuant to State law and the by-law.

Norman appealed to Superior Court. On October 30, 2000, a judge affirmed the board's denial of the special permit. The judge further found and ruled that (1) Roland had participated in the application and obtaining of the variance, he relied upon its terms in constructing two homes (one in violation of the zoning by-laws), and he and his successors were estopped from denying the terms or the existence of the variance; (2) historic lots 47 and 48 had merged, for zoning purposes, and neither the by-law nor State law permitted Roland to tear down the offending building on historic lot 48 and build another structure; (3) the prior nonconforming use of historic lot 48 had been abandoned, and all future use must comply with the by-law; and (4) Norman's requested use of historic lot 48 did not conform with the by-law. While Norman filed a notice of appeal from this judgment, he did not perfect the appeal. Therefore, this judgment became final as matter of law.

3. *The 2008 Superior Court judgment.* In the spring of 2005, the Cornells observed that construction of a large structure had begun on adjacent land, historic lot 48. The Cornells inquired with the office of defendant Gerald D. Rivet (Rivet), the current town building inspector, about the propriety of this construction. Rivet refused to see the Cornells, and his office dispensed conflicting information about the existence of the permit. At some point during April, 2005, a representative of Rivet's office showed the Cornells a building permit purportedly issued to Roland on February 25, 2005. The representative also showed the Cornells an "agreement between the parties," also dated February 25, 2005, in which Roland, Norman, and Rivet purported to agree, with no reference to the 2000 Superior Court judgment to the contrary, that historic lot 48 was eligible for a building permit.[8]

---

[7] For all time relevant to this case, the by-law defined a single-family dwelling as "[a] detached residential building intended and designed to be occupied exclusively by a single family."

[8] The "agreement" recited, inter alia, "The parties hereby agreed [*sic*] that 98 Edgewater Drive AKA Assessor's Plat 2 Lot 48 is eligible for a building permit," and "[t]he parties further agree to waive any and all legal actions and agree that no costs or fees shall be awarded to either parties [*sic*]."

Attempting to reconcile the purported permit and the "agreement" with the 2000 Superior Court judgment, the Cornells attended a meeting of the town's board of selectmen in early May, 2005. At the meeting, the Cornells inquired about the permit and the construction and brought a copy of the 2000 Superior Court decision to the attention of the selectmen. The selectmen apparently referred the matter to the town administrator, who responded in a letter dated May 4, 2005. The administrator wrote that the construction was proper and included copies of the permit and the "agreement."

The Cornells, through counsel, replied to the town administrator on June 17, 2005, with a copy of the reply directed to Rivet. Their reply noted that, by virtue of the 2000 Superior Court judgment, the by-law and applicable State law did not allow the inspector to issue a permit for demolition and new construction on that land, historic lot 48. Neither the administrator nor Rivet replied. On August 15, 2005, the Cornells' lawyer filed a formal enforcement request with Rivet pursuant to G. L. c. 40A, § 7. When Rivet again failed to respond, the Cornells appealed Rivet's non-action to the board pursuant to G. L. c. 40A, §§ 8 and 15, on August 31, 2005. The board heard the appeal, without any argument by Roland as to jurisdiction or timeliness, and denied it on November 23, 2005.

The Cornells filed this action in Superior Court under G. L. c. 40A, § 17, and G. L. c. 249, § 5. On July 21, 2008, after a bench trial, the judge ruled that the 2000 Superior Court judgment conclusively determined that historic lot 48 is not a separate, buildable lot and that Rivet could not issue the subject permit. The judge further ruled that the 2000 Superior Court judgment collaterally estopped Roland from relitigating the issue of pre-existing nonconforming use. The judge ordered Rivet to revoke any outstanding building permits issued in relation to historic lot 48, ordered Rivet to take any and all action necessary to cause the removal of the new residential structure on historic lot 48, and ordered Roland to remove any and all structures and restore historic lot 48, as nearly as possible, to its undeveloped state.

Roland now appeals the 2008 judgment, arguing (1) the board and the Superior Court lacked jurisdiction because the Cornells

did not timely appeal to the board from the purported issuance of the building permit, (2) the judge committed clear error in determining that the Cornells had standing to seek judicial review, (3) laches bars the Cornells from seeking equitable relief, and (4) the judge erroneously ordered Roland to restore historic lot 48 to its preconstruction condition without determining whether, in its current state, historic lot 48 could support a permissible use.

4. *Timeliness of the appeal.* Roland argues, for the first time on appeal and relying principally on *Gallivan* v. *Board of Appeals of Wellesley,* 71 Mass. App. Ct. 850 (2008), that the Superior Court lacked jurisdiction to hear the Cornells' complaint. Roland argues that the Cornells did not adhere to the thirty-day time limit at issue in *Gallivan,* G. L. c. 40A, §§ 8, 15 (thirty-day remedy), that he argues should be applicable to the zoning component of the Cornells' complaint. Roland acknowledges that a person seeking to bring an enforcement action has six years to do so, G. L. c. 40A, § 7 (six-year remedy), but argues that, because the Cornells had a "fair opportunity to appeal from the issuance of [Roland's] permit," within thirty days, they were limited to the thirty-day remedy and excluded from the six-year remedy. *Gallivan, supra* at 855.

We conclude that *Gallivan* does not apply here to restrict the Cornells to the thirty-day remedy.[9] The purported "agreement between the parties" was void ab initio. Because the permit was premised on the provision in the void "agreement" that historic lot 48 was buildable, the 2000 Superior Court judgment that historic lot 48 was not buildable controlled, and the purported permit issued in contravention of that judgment was also void ab initio. Because the permit was void, it was not an "order or decision" within the meaning of G. L. c. 40A, § 8, and no

---

[9] In reaching this conclusion, we obviate the need to decide whether Roland, by arguing the rule of *Gallivan* for the first time in this court, waived the argument by depriving the trial judge of the opportunity to consider the question of the adequacy of the Cornells' notice and resolve it after making "findings of relevant facts and appropriate rulings of law." *Gallivan, supra* at 858. We note the typical rule that waiver applies when resolution of the late-raised argument requires "an adequate record and findings concerning a claim to permit [the appellate court] to resolve that claim properly." *R.W. Granger & Sons, Inc.* v. *J & S Insulation, Inc.,* 435 Mass. 66, 74 (2001).

appeal to the board was required within thirty days of the Cornells' acquiring notice of the purported permit.[10] The Cornells, unconstrained by *Gallivan*, timely sought zoning enforcement, see G. L. c. 40A, § 7, and timely appealed, see G. L. c. 40A, §§ 8, 15, 17; *Hogan* v. *Hayes*, 19 Mass. App. Ct. 399, 402-403 (1985). The board and the Superior Court therefore had the authority to entertain the Cornells' claims.

The "agreement" was void ab initio. A municipal official, Rivet, purported to abrogate a final judgment of the Superior Court by clandestine agreement with parties bound to it.[11] Nothing in the by-law or the zoning act gives Rivet the authority to enter into such an "agreement." Accordingly, this "agreement," made in excess of Rivet's authority and in contravention both of a binding Superior Court judgment and the by-law, "was void from its inception." *Boston* v. *Back Bay Cultural Assn., Inc.*, 418 Mass. 175, 184 (1994).

Because the "agreement" had no force or effect, the 2000 Superior Court judgment remained the definitive, binding statement of historic lot 48's legal status. That judgment conclusively determined that (1) historic lot 48's prior nonconforming use had been abandoned, (2) it was not a buildable lot, and (3) it was ineligible for a building permit. Rivet had no power, from the Zoning Act or elsewhere, to contravene, indeed, to blatantly defy, this binding final Superior Court judgment.[12] Accordingly, the purported issuance of a building permit which that judgment renders impermissible was a nullity.[13] See *D'Errico* v. *Board of Assessors of Woburn*, 384 Mass. 301, 307-308 (1981), and cases

[10]Because Roland did not raise below the timeliness of the Cornells' appeal, the judge did not consider it and, accordingly, did not rest his decision on this ground. We may, however, "affirm a judgment as long as the result is correct on any ground apparent on the record that supports the result reached by the trial court." *Colony of Wellfleet, Inc.* v. *Harris*, 71 Mass. App. Ct. 522, 529 (2008), citing to *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993).

[11]Although Rivet also was not formally a party to the prior Superior Court litigation, the record unambiguously demonstrates his awareness of the judgment.

[12]The record discloses that Rivet knew, even prior to the 2000 Superior Court judgment, that he could not issue a building permit for historic lot 48. He had notice of no fewer than five opinion letters from the town's outside counsel, Kopelman and Paige, P.C., stating that historic lot 48 was ineligible for special permits or the building permit he purportedly issued in 2005.

[13]We pointedly do not hold that a permit that may conflict with a provision

cited (municipal act that is "illegal and void" is an "unenforceable nullity").

Because the permit was an unenforceable nullity, it was not a valid "order or decision." See G. L. c. 40A, § 8. The Cornells, accordingly, did not have to appeal within thirty days of acquiring notice of this void permit.[14] Contrast *Gallivan, supra* at 858-859 (routine, orderly, and transparent municipal process resulted in the issuance of a valid building permit, and notice of the permit was mailed and published according to express notice provisions of the Wellesley by-law).

Unconstrained by the thirty-day remedy, the Cornells properly resorted to the six-year remedy in G. L. c. 40A, § 7. By making written demand upon Rivet to enforce the by-law in June, 2005,[15] and again in August, 2005, the Cornells timely sought enforcement. Although Rivet did not respond to these enforcement requests, Roland has waived the argument that the absence of a response by Rivet precludes this appeal to the board. See, e.g., *Hogan, supra.*

The board therefore had the authority to consider the propriety of Rivet's failure to enforce the by-law. When the board denied the Cornells' appeal, they timely sought judicial review in Superior Court. See G. L. c. 40A, § 17. Accordingly, it was proper for the Superior Court to hear this case.

5. *Standing.* Roland next complains that the judge committed clear error in finding that the Cornells presented credible evidence sufficient to establish their standing to seek judicial review. We agree with the judge.

---

of the by-law is similarly void. Our decision is limited to cases where, as here, the permit is issued in violation of a final judgment of a court of the Commonwealth.

[14]Because we decide that the void permit is not an "order or decision," we need not reach the issue whether a void permit could convey "adequate notice" of such an "order or decision." See *Gallivan, supra* at 858 ("In other instances, disputes [with respect to sufficient notice] will have to be resolved by findings of relevant facts and appropriate rulings of law. We do not purport to suggest [in this case] what does or does not constitute adequate notice for the purpose"). We note that, despite not being parties to the 2000 Superior Court judgment, the record clearly demonstrates that the Cornells had been identified as potential trial witnesses, attended the trial, knew of the outcome, and had possession of a copy of the judge's decision.

[15]Although the Cornells' counsel directed this correspondence to the town administrator, Rivet was copied on the letter and admitted to receiving it.

For purposes of the zoning act, only a "person aggrieved" may seek judicial review. G. L. c. 40A, § 17. In order to qualify as a "person aggrieved," one must assert "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge,* 27 Mass. App. Ct. 491, 493 (1989).

We will not set aside a judge's determination, made after an evidentiary hearing or trial, that a party is a "person[] aggrieved" under the zoning act unless "clearly erroneous." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport,* 421 Mass. 719, 720, 722 (1996). The judge determined that the Cornells were so aggrieved. Because the record contains ample evidence to support this determination, including photographs of the intrusive construction on historic lot 48 and the undisputed fact that the proposed structure increases the existing dimensional nonconformity on historic lot 48,[16] the judge's determination was not clearly erroneous.

6. *Laches.* Roland argues that the affirmative defense of laches applies to bar the Cornells' claims for equitable relief. This argument fails.

"Laches is an unjustified, unreasonable, and prejudicial delay in raising a claim. . . . Laches is not mere delay but delay that works disadvantage to another." *Colony of Wellfleet, Inc.* v. *Harris,* 71 Mass. App. Ct. 522, 531 (2008) (quotations and citations omitted). "The operation of laches generally is a question of fact for the judge, and a judge's finding as to laches will not be overturned unless clearly erroneous." *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 517 (2005).

Here, the secretive and bizarre manner by which Rivet issued this purported building permit justified and made reasonable the resulting mild delay in the Cornells' raising of a claim. Moreover, Roland cannot claim disadvantage resulting from the delay. The record firmly established Roland's awareness of the 2000 Superior Court judgment, so any purported reliance on a building permit issued in contravention of that judgment is

---

[16]Although the Cornells also own a nonconforming lot, this fact does not negate their standing for zoning act purposes. *Tsagronis* v. *Board of Appeals of Wareham,* 33 Mass. App. Ct. 55, 59 (1992).

wholly unreasonable. The judge properly ruled that laches did not apply.

7. *Remedy.* Finally, Roland argues that the judge inappropriately ordered the "extreme remedy" of restoring historic lot 48 to the status quo ante the construction without first considering if the structure could conform to a legal use. The judge's order was correct.

If a landowner can modify an incomplete structure or seek an appropriate variance or permit so as to bring the property into compliance with a zoning by-law, court-ordered demolition is an inappropriate remedy. *Building Inspector of Falmouth* v. *Haddad,* 369 Mass. 452, 459 (1976). However, where a landowner builds despite notice of a nonconformity and adverse judicial action, the landowner acts at his own peril and cannot protest an order to restore the land to its preconstruction state. See *Wells* v. *Zoning Bd. of Appeals of Billerica,* 68 Mass. App. Ct. 726, 737 & n.18 (2007)

Here, Roland, Rivet, and the board all had ample notice of the tortured history of historic lot 48, including proceedings before the board, opinions from town counsel, and the 2000 Superior Court final judgment. We agree with the judge that Roland's lengthy and intimate involvement in this case throughout adverse judicial action makes plain that he appreciated the risks of the unlawful construction and proceeded anyway. As a result, Roland acted at his own peril, and he cannot request an opportunity to cure the nonconformity of his use which he did not cure prior to beginning construction. The judge therefore properly issued orders to Roland and Rivet that all structures be removed from historic lot 48 and the land restored to its undeveloped state.

8. *Conclusion.* We have no occasion to disturb the judge's order for final judgment that ordered defendant Rivet to revoke any outstanding building permits issued in relation to historic lot 48, ordered defendant Rivet to take any and all action necessary to cause the removal of the new residential structure on historic lot 48, and ordered Roland to remove any and all structures and restore historic lot 48, as nearly as possible, to its undeveloped state.

*Judgment affirmed.*